No. 13          March 3, 2016          741

IN THE SUPREME COURT OF THE
STATE OF OREGON

Inquiry Concerning a Judge,
Re: THE HONORABLE
WALTER RANDOLPH "RANDY" MILLER,
*Respondent.*
(CJFD 14-50; SC S063788)

En Banc

On review of the Commission on Judicial Fitness and Disability Finding of Fact, Conclusion of Law, and Recommendation.

Submitted on the record January 26, 2016.

Lisa Ludwig, Portland, represented the Commission on Judicial Fitness and Disability.

W. Michael Gillette, Schwabe Williamson & Wyatt PC, Portland, represented respondent.

PER CURIAM

The recommendation of the Commission on Judicial Fitness and Disability is accepted, and the formal complaint is dismissed.

**PER CURIAM**

This case is before us on a recommendation from the Commission on Judicial Fitness and Disability. The commission filed a formal complaint alleging that respondent, now a circuit court judge, had violated the Oregon Code of Judicial Conduct (Code) in connection with a 2014 voters' pamphlet statement supporting his judicial candidacy. The commission specifically alleged violations of Rule 2.1(D) (judge shall not engage in "conduct involving dishonesty, fraud, deceit, or misrepresentation") and Rule 5.1(D) (judicial candidate shall not knowingly or with reckless disregard for truth make any "false statement" concerning qualifications, education, experience, or other material fact relating to judicial campaign). The commission conducted a hearing and now recommends that we dismiss the formal complaint. *See* ORS 1.430(1) (if commission holds hearing, Supreme Court shall review record of proceedings on law and facts and may discipline judge). We accept the commission's recommendation.

The facts, taken from the record, are as follows. In 2010, before he became a judge, respondent attended a week-long "trial academy" presented by the International Association of Defense Counsel (IADC), held on the campus of Stanford Law School. Although held on the Stanford campus, the academy was not affiliated with that school. Upon completion, respondent received a certificate stating that he "successfully completed the course of instruction at the IADC Trial Academy, Stanford Law School[.]"

In 2013, respondent filed for election to an open judicial position on the Deschutes County Circuit Court. As part of his initial form submission to the Secretary of State, under "Education Information," "Educational Background (schools attended)," respondent listed his college and law school degrees, and under a related section, "Educational Background (other)," respondent identified his participation in the academy as follows: "International Association of Defense Counsel: Trial Academy Graduate, *at* Stanford Law School." (Emphasis added.)

After respondent completed his Secretary of State submission, he prepared a voters' pamphlet statement, limited to a 325-word narrative. To prepare that narrative, he

reviewed the Elections Division's *Candidates Manual* for compliance, and he also consulted with colleagues. Respondent decided to include a reference to the academy in a section that contained his college and law school information, which he entitled "Educational Background."  In doing so, he did not include the word "at" before "Stanford Law School," as he had in his earlier Secretary of State submission; instead, he replaced "at" with a comma. He initially used "IADC" to describe the academy—specifically writing "IADC Trial Academy, Stanford Law School"—but he eliminated that modifier after a judge who reviewed the draft statement suggested that it was not recognizable. Respondent opted not to spell out "IADC" so that he could save four words to use elsewhere in his statement. He asked a different judge to review an updated draft that removed "IADC," and that judge told him that nothing about "Trial Academy, Stanford Law School," appeared misleading to him. Respondent's final voters' pamphlet statement therefore stated, "Trial Academy, Stanford Law School," as part of his educational background.

Respondent's reference to the academy and Stanford Law School in his voters' pamphlet statement became an issue during the campaign. After respondent was elected to a judicial position, the commission received a complaint, which it investigated, resulting in the filing of a formal complaint. At a hearing on that formal complaint, respondent asserted that the contested statement had not been false and that his decision to reword the description of the academy, following his initial Secretary of State filing, had been merely editorial in nature. He further asserted that, because Rule 2.1(D) applied to only "[a] judge," but not also "a judicial candidate," that rule did not apply to his conduct at the time of his candidacy, before he became a judge.

After the hearing, the commission filed an opinion with this court, which, as noted, recommended dismissal. As to Rule 5.1(D), which expressly applies to "a judge or a judicial candidate," the commission recommends dismissal on the merits, because respondent's voters' pamphlet statement was not "false" within the meaning of that rule. As to Rule 2.1(D), which expressly applies to only "[a] judge," the commission reasoned that, because Rule 5.1(D) sets out a

more "specific" prohibition that applies to "a judge or a judicial candidate," that latter rule "govern[ed]" the conduct at issue here. As discussed below, although we do not precisely agree with the commission's particular reasoning, we conclude that Rule 2.1(D) did not apply to respondent's conduct and that the allegation under that rule therefore should be dismissed. We further conclude, as did the commission, that the allegation under Rule 5.1(D) also should be dismissed.

        The commission must establish a violation of the Code by clear and convincing evidence. Commission on Judicial Fitness and Disability Rule of Procedure 16. "Clear and convincing evidence means that the truth of the facts asserted is highly probable." *In re Jordan*, 295 Or 142, 156, 665 P2d 341 (1983) (internal quotation marks omitted). Additionally, under Article VII (Amended), section 8(1)(b), of the Oregon Constitution, a judge may be removed, suspended, or censured for "[w]ilful misconduct" in judicial office, "where such misconduct bears a demonstrable relationship" to the effective performance of judicial duties; further, under section 8(1)(e), a judge similarly may be removed for "[w]ilful violation" of any judicial conduct rule. *See also In re Schenck*, 318 Or 402, 405, 870 P2d 185 (1994) (explaining section 8(1)(e)). Our review is *de novo*. ORS 1.430; *In re Ochoa*, 342 Or 571, 574, 157 P3d 193 (2007).

        The predicate question whether Rule 2.1(D) applies to respondent's conduct involves an examination of that rule as compared to Rule 5.1(D), as well as an additional rule, Rule 1.1, which describes the scope of the Code. Rule 1.1 provides, in part:

> "*** The Oregon Code of Judicial Conduct establishes standards for the ethical conduct of judges *and judicial candidates*. A judge *or judicial candidate shall comply with the provisions of this Code* and may be disciplined for violation of the Code.
>
> "*Because a judge or judicial candidate may be disciplined for violations of this Code*, the provisions are limited to addressing specific circumstances where certain conduct is either prohibited or required. ***"

(Emphasis added.) Rule 2.1(D) expressly applies to "[a] judge" and provides that a judge "shall not engage in conduct

involving dishonesty, fraud, deceit, or misrepresentation." By contrast, Rule 5.1(D) expressly applies to "a judge or a judicial candidate" and provides that a judge or judicial candidate shall not, "[e]xcept as permitted by law,"

> "knowingly or with reckless disregard for the truth, make any false statement concerning a judicial candidate's identity, qualifications, present position, education, experience, or other material fact that relates to the judicial campaign of the judge or any judicial candidate[.]"

In light of the commission's recommendation—which determined that Rule 5.1(D), rather than Rule 2.1(D), "govern[ed]" the conduct at issue—this case poses a construction question, most notably as to the "scope" rule, Rule 1.1.

Beginning very simply with the text of Rule 2.1(D), we observe, as did respondent and the commission below, that that rule expressly applies to only "[a] judge," contrasted against Rule 5.1(D), which applies to both "a judge or a judicial candidate." Rule 1.1 provides necessary context for that textual difference; that rule, however, could be read in more than one way, as discussed below.

As noted, Rule 1.1 provides, in part, that the Code "establishes standards for the ethical conduct of judges *and judicial candidates*" and that "[a] judge *or judicial candidate shall comply with the provisions of this Code \*\*\**." (Emphasis added.) One way to read that rule is that *all* the Code's provisions apply to both judges and judicial candidates, with the exception of provisions that, by their nature, could apply to only judges. As an example of the latter, Rule 3 sets out provisions relating to the impartial and diligent performance of judicial duties that, in practical operation, can apply to only judges. *See, e.g.*, Rule 3.2 (ensuring right to be heard); Rule 3.7 (decorum, demeanor, and communication with jurors); Rule 3.9 (*ex parte* communications); Rule 3.10 (disqualification).  Other provisions of the Code that textually apply to only "a judge," however, could be read to apply to both judges and judicial candidates. For example, most, if not all, of Rule 2—which sets out provisions relating to maintaining the integrity of the judicial system—theoretically could apply to both judges and judicial candidates *See, e.g.*, Rule 2.1 (various rules to promote confidence in

judiciary); Rule 2.2 (avoiding misuse of prestige of judicial office, which could apply to both present and future office). Similarly, Rule 4—which sets out provisions about minimizing the risk of conflict between a judge's activities and the obligations of judicial office—contains some provisions that, by their nature, could apply to only judges, but also theoretically could apply to judicial candidates. *Compare* Rule 4.8 (prohibiting "[a] judge" from practicing law, which would apply to only a judge), *with* Rule 4.5(A) (prohibiting "a judge" from personally soliciting funds for an organization or entity, with exceptions, which could apply to both a judge and a judicial candidate). And, of course, most of Rule 5 both in its text and in practical operation applies to both judges and judicial candidates. *See generally* Rule 5 (setting out provisions relating to engaging in political and judicial campaign activities). If Rule 1.1 were construed to apply to both judges and judicial candidates as to any provision of the Code that, by its nature, *could* apply to judicial candidates, then respondent would have been required to comply with Rule 2.1(D) (prohibiting engaging in conduct involving dishonesty, deceit, or misrepresentation), as well as Rule 5.1(D) (prohibiting making false statement in relation to judicial campaign).

The other way to read Rule 1.1, however, is to mean that judicial candidates are bound by the Code, even though they are not "judges," but they are so bound only as to those provisions that expressly apply to a "judicial candidate." That is, in stating that the Code "establishes standards for the ethical conduct of judges and judicial candidates" and that "[a] judge or judicial candidate shall comply with the provisions of this Code," Rule 1.1 could be intended to mean that judges must comply with all the "judge" rules, and judicial candidates must comply with all the "judicial candidate" rules. Only Rule 5 sets out rules that expressly govern both judges and "judicial candidate[s]," *see* Rule 5.1 (political activities of judges and judicial candidates in general); Rule 5.2 (judge or judicial candidate shall take reasonable measures to ensure that other persons and organizations do not undertake, on judge's or candidate's behalf, any activity prohibited under Rule 5). Otherwise, the rest of the Code—including Rule 2.1(D)—textually applies to only "a judge."

Under that alternative reading, Rule 2.1(D) could not have applied to respondent's conduct while he was a judicial candidate, before he became a judge.[1]

The underlying history of Rule 1.1 resolves those competing readings in respondent's favor. Rule 1.1 is based, in part, on the "Scope" section of the 2007 American Bar Association's Model Code of Judicial Conduct. Rule 1.1, Notes on Sources, *printed in* Oregon Rules of Court, v I - State (2015). The Model Code's Scope statement refers to a separate "Application" section that establishes when the various model rules "apply to a judge or judicial candidate." ABA Model Code of Judicial Conduct (Feb 2007), Scope [1], 2, http://www.americanbar.org/content/dam/aba/migrated/ judicialethics/ABA_MCJC_approved.authcheckdam.pdf (accessed Feb 25, 2016). That "Application" section, in turn, expressly states that Canon 4 of the Model Code—which, as with Rule 5 of the Oregon Code, sets out political activity and campaigning rules for "[a] judge or candidate for judicial office"—applies to "judicial candidates." Model Code, Application I, 6.[2] That express link in the Model Code's Application section between "judicial candidates" and Canon 4 necessarily precludes a conclusion that any *other* canon of the Model Code—such as any provision designed to ensure

---

[1] We do not agree with the commission's framing of the issue as whether, because it more specifically applies to "a judge or a judicial candidate," Rule 5.1(D) "govern[ed]" the conduct in this case. This case did not require the commission to apply conflicting rules, which in turn might have invoked the statutory construction principle that a particularly worded statute controls over a conflicting, generally worded statute. *See* ORS 174.020(2) (setting out principle); *Kambury v. DaimlerChrysler Corp.*, 334 Or 367, 374, 50 P3d 1163 (2002) (stating and applying principle). Instead, the formal complaint alleged that respondent had violated two rules as a result of a single course of conduct, both of which could apply to that conduct, if Rule 2.1(D) applies to judicial candidates.

[2] The Application section of the Model Code provides, in part:

"The Application section establishes when the various Rules apply to a judge or judicial candidate.

"I.  APPLICABILITY OF THIS CODE

"(A) The provisions of the Code apply to all full-time judges. Parts II through V of this section identify those provisions that apply to four distinct categories of part-time judges. *** *Canon 4 applies to judicial candidates.*"

Model Code (2007), Application, I(A), 6, http://www.americanbar.org/content/ dam/aba/migrated/judicialethics/ABA_MCJC_approved.authcheckdam.pdf (accessed Feb 25, 2016) (footnote omitted; emphasis added).

preservation of the integrity, impartiality, and independence of the judiciary—applies to judicial candidates.

The Oregon Code also contains an "Application" section, Rule 1.2, but that section does not mention applicability of the Oregon Code to judicial candidates.[3] Given that Rule 1.1 is based on the Model Code's Scope section, however, and because the Model Code's Scope section in turn incorporates an express clarification that judicial candidates are bound by only the Model Code's political and campaign rules that expressly refer to "a candidate for judicial office," we likewise construe Rule 1.1 to mean that only provisions in the Oregon Code that expressly refer to a "judicial candidate" apply to such candidates. Under that construction, Rule 2.1(D), which applies to only "[a] judge," did not apply to respondent's conduct. We therefore accept the commission's recommendation to dismiss that allegation.

As to the allegation under Rule 5.1(D) (false statement relating to judicial campaign), the commission determined—as respondent argued below—that respondent's voters' pamphlet statement had not been "false" within the meaning of that rule. After reviewing the record, even if respondent's statement qualified as a "false statement" for purposes of Rule 5.1(D) (which we do not decide), we are not persuaded by clear and convincing evidence that respondent acted with the requisite mental state. *See* Rule 5.1(D) (false statement must be made knowingly or with reckless disregard for truth); Article VII (Amended), § 8(1)(b), (e) (judge may be disciplined for "[w]ilful misconduct" or "[w]ilful violation" of judicial conduct rule). We therefore also accept the commission's recommendation to dismiss that allegation.

The recommendation of the Commission on Judicial Fitness and Disability is accepted, and the formal complaint is dismissed.

---

[3] Rule 1.2 describes when the Oregon Code applies in different circumstances in which a person might perform the functions of a judge. That rule, similarly to Rule 1.1, is based in part on the "Application" section of the Model Code. Rule 1.2, Notes on Sources, *printed in* Oregon Rules of Court, v I - State (2015). The "Application" section of the Model Code contains similar provisions pertaining to the functions of a judge, but also, as noted, includes an express "judicial candidates" applicability provision. *See* 358 Or at 747 n 2 (quoting that provision). Rule 1.2 also is similar in subject matter to *former* JR 5-101 (2012), Rule 1.2, Notes on Sources, which provided that "[a]ll *judges* shall comply with this Code except as provided otherwise in this rule." (Emphasis added.)